# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEELEY HAMILTON,

     *Plaintiff*,

*v.*

COMMISSIONER OF
SOCIAL SECURITY,

     *Defendant.*

_____/

CASE NO. 2:22-cv-10066

HON.  MARK A GOLDSMITH
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

## I.  RECOMMENDATION

Plaintiff challenges the Commissioner of Social Security regarding a final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The case was referred to the undersigned for review. (ECF No. 2); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3).  For the reasons set forth below, I recommend that the Commissioner's motion for summary judgment (ECF No. 12) be **GRANTED** and that Plaintiff's motion (ECF No. 10) be **DENIED.**

## II.  REPORT

### A. Introduction and Procedural History

On March 7, 2017, Plaintiff applied for DIB and SSI, alleging disability as of December 28, 2015. (ECF No. 8-5, PageID.221-242).  She alleges disability due to arthritis of the back and arm and leg numbness. (ECF 8-6, PageID.263-267).

### 1.  The February 1, 2019 Determination and Remand

Following the denial of the claim at the initial level, Plaintiff requested a hearing, held on October 18, 2018 before Administrative Law Judge ("ALJ") Anthony R. Smereka.  (ECF No. 8-2, PageID.64; ECF No. 8-3, PageID.102-121). Plaintiff and a Vocational Expert ("VE"), John N. Stokes both testified. (ECF No. 8-2, PageID.64-99).  On February 1, 2019, ALJ Smereka found that Plaintiff had acquired work skills from her past relevant work and was accordingly not disabled. (*Id*. at PageID.47-62).  On March 10, 2020, the Appeals Council declined to review the administrative decision.  (*Id*. at PageID.32-34).  Plaintiff filed suit in this Court on April 27, 2020. (ECF No. 8-9, PageID.524-527); Case No. 2:20-cv-11033.

The case was referred to me for Report and Recommendation.  On March 31, 2021, I recommended that the case be remanded to the administrative level for further proceedings on the basis that the ALJ failed to ask the VE whether his testimony conflicted with the information found in the Dictionary of Occupational Titles ("DOT") in accordance with Social Security Ruling ("SSR") 4-p, 2000 WL 1898704, at *2 (Dec. 4, 2000):

> [T]he potential conflict between the DOT descriptions and the VE's testimony is not one that can be so clearly resolved without a remand. Stated differently, the VE's conclusion that Plaintiff possessed transferable skills from having been a cashier-checker is not so sound that any failure on the part of the ALJ to inquire about conflicts could be considered harmless. . . . It is not clear from the record whether Plaintiff acquired the requisite cashiering skills in her prior jobs. Plaintiff's description of her work duties casts doubts on any conclusion that she did acquire such skills. . . . I therefore suggest that the case be remanded to allow the ALJ to inquire and resolve the potential conflicts regarding transferable skills and the proper classification of Plaintiff's [past relevant work].

Case No. 2:20-cv-11033; (ECF No. 18, PageID.555-557).  On April 16, 2021, the District Court, observing that no objections had been filed to the Report and Recommendation, accepted my recommendation and remanded the case to the administrative level for further proceedings. *Id.*; (ECF Nos. 19-20).  On May 17, 2021, the Appeals Council vacated the ALJ's determination and remanded the case for further proceedings "consistent with the order of the court." (ECF No. 8-9, PageID.556).

## 2.  The October 29, 2021 Determination

At a second hearing before ALJ Smereka on August 18, 2021, Plaintiff and VE John N. Stokes both testified. (ECF No. 8-8, PageID.447-500).  On October 29, 2021, ALJ again found that Plaintiff was not disabled. (*Id.* at PageID.424-446). Plaintiff filed suit in this Court on January 12, 2022.  (ECF No. 1).

**B. Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2012). The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide

4

the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months. 42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

**D. The ALJ's October 29, 2021 Findings**

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability date of December 28, 2015. (ECF No. 8-8, PageID.429). At step two, the ALJ found the following impairments severe: "degenerative disc disease of the spine, left cubital tunnel syndrome, and obesity" (*Id*.) At step three, she found that none of the impairments met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PageID.430).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:[1]

> [S]he must avoid hazards, including work at unprotected heights or around dangerous moving machinery. She can do no climbing of any ladders, ropes, or scaffolds. She has the ability for no more than occasional climbing of ramps or stairs. She has the ability for no more than occasional balancing, stooping, kneeling, and crouching. She can do no crawling. She should avoid driving in the course of employment. She has the ability for frequent handling and/or fingering in the left non-dominant upper extremity; she is restricted from any constant handling

---

[1] Under 20 C.F.R. § 404.1567(a-d) *sedentary* work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and  exertionally *heavy* work as "involv[ing] lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

or fingering in the left non- dominant upper extremity. She is
unrestricted in the right dominant upper extremity.

(*Id.* at PageID.430-31).

At step four, the ALJ found that Plaintiff was unable to perform any of
her past relevant work as a retail cashier or store laborer.  (*Id.* at PageID.436).
At step five, the ALJ cited the VE's testimony in support of his determination
that Plaintiff had the transferrable skills to perform the sedentary, semiskilled
work of a food checker (58,000 positions in the national economy) and auction
clerk (6,000).  (*Id.* at PageID.438).   The ALJ concluded that Plaintiff was not
disabled between the alleged onset date of December 28, 2015 through the
date of the decision.  (*Id.* at PageID.440).

### E.  Administrative Record[2]

### 1.  Medical Evidence

In June 2017, Jerry Csokasy, Ph.D. performed a non-examining review of the
psychologically-related  medical  evidence  on  behalf  of  the  SSA,  finding  that

---

[2] Plaintiff arguments for remand pertain exclusively to the VE's job findings and the
ALJ's adoption of same.  She does not contest the ALJ's evaluation of her professed
degree of impairment or the Residual Functional Capacity ("RFC") for a range of
exertionally light work.   My own review of the transcript shows that the ALJ's
evaluation of the subjective claims and RFC are supported by substantial evidence.
As such, the Report is limited to only a brief summary of the medical records and
Plaintiff's testimony.

Plaintiff's limitations as a result of depression and anxiety were exclusively mild. (ECF No. 8-3, PageID.106).  The same month, Robin Mika, D.O. performed a non-examining review of the records pertaining to Plaintiff's physical condition, finding that Plaintiff could (at a maximum) lift or carry 20 pounds occasionally and 10 frequently and sit, stand, or walk for around six hours in an eight-hour workday; and unlimited pushing and pulling in the upper extremities. (*Id*. at PageID.107-08).  Dr. Mika found that due to degenerative disc disease, Plaintiff was limited to occasional pushing and pulling in the lower extremities.  (*Id*. at PageID.108).  She precluded all climbing of ladders, ropes, and scaffolds with otherwise occasional postural activity. (*Id*.)  As to environmental restrictions, Plaintiff was limited to work avoiding concentrated exposure to extreme cold and hazards and "even moderate exposure" to vibration.  (*Id*. at PageID.109).

In May 2021, Sarah LaPonsa, P.A. completed a medical source statement, noting the diagnoses of chronic neck and back pain; sacroiliac joint pain; and left ulnar neuropathy.  (ECF No. 8-16, PageID.1243).  LaPonsa noted that back and neck pain were worsened by prolonged sitting or standing.  (*Id*.)  She stated that the diagnoses were supported by an EMG (ulnar neuropathy) and MRIs showing mild cervical spondylosis (neck pain) and moderate lumbar spondylosis (back pain).  (*Id*.) She declined to impose sitting, standing, walking, lifting, carrying, postural, or

manipulative restrictions.  (*Id*. at PageID.1244-47).  She opined that Plaintiff should "[a]void prolonged elbow flexion or pressure to the elbows." (*Id*. at PageID.1247).

### 2.  Plaintiff's Testimony at the August 18, 2021 Hearing

In response to questioning by the ALJ, Plaintiff affirmed that she worked as a cashier in a retail business from September 2000 to 2005 and then between 2005 and 2015. While working for Kohl's, she "ran register," helped customers, cleaned area floor, dash picked up department, rehung and refolded clothes, pulled stock, redid displays, and took items out of the store for customers.  (ECF No. 8-8, PageID.455).  She added that for her first five years at Kohl's she worked primarily as a cashier, and the last five years doing mostly floor work with limited amount of cashier work.  (*Id*. at PageID.457).

In response to questioning by her attorney, Plaintiff reported that the condition of hand numbness had improved since the 2018 hearing, but that otherwise her physical condition had remained the same or worsened.  (*Id*. at PageID.489-90).  She was unable to sit for more than 15 minutes due to "tailbone" pressure; stand for more than two minutes without support; or walk for more than 50 feet.  (*Id*. at PageID.490, 495-496).  She took Tylenol for back pain.  (*Id*. at PageID.492).  She was able to drive.  (*Id*. at PageID.497).

### 3. The VE's Testimony[3]

At the October 18, 2018 hearing, the VE classified Plaintiff's past relevant work as a retail cashier as semiskilled and exertionally light. (ECF No. 8-2, PageID.80). The VE found that the transferrable work skills from the cashiering position included "cashiering, processing, payment for business services via check, money order, cash, [and] credit card." He testified that the former work would transfer to the job of cashier, food checker, DOT No. 211.482-014 (58,000 positions in the national economy, 2,000 in the regional economy) and auction clerk, DOT No. 294.567-010 (6,000). (*Id.* at PageID.81). The ALJ posed the following set of modifiers to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [Limited to] light work; no exposure to hazards and that includes working in unprotected heights or on dangerous, moving machinery; no climbing of any ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional balancing, stooping, kneeling, crouching; no crawling; no driving in the course of employment; no constant handling or fingering in the left non-dominant upper extremity, but with the ability for frequent handling and/or fingering in that extremity.

(*Id.* at PageID.95-96). The VE testified that the hypothetical restriction would allow

---

[3] The hypothetical question posed to the VE and the VE's responding job testimony form the basis of the RFC and the Step five findings found in both administrative opinions. (ECF No. 8-2, PageID.53, 57); (ECF No. 8-8, PageID.431, 438).

for the sedentary work of cashier food checker and auction clerk. (*Id*. at PageID.96).

At the August 18, 2021 hearing, the same VE stated that he "would not reclassify" his earlier finding that Plaintiff's past relevant work included the position of retail cashier. (ECF No. 8-8, PageID.452). The VE testified that the hypothetical modifiers posed at the earlier hearing would allow for the work of a cashier, food checker, DOT No. 211.482-014 (58,000), and auction clerk, DOT 294.567-010 (6,000). (*Id*. at PageID.460).

The ALJ then asked the VE if his testimony was consistent with the information found in the DOT, to which the VE responded:

> It's consistent with the DOT, with a couple of exceptions. The restriction from driving is an exception and the frequent handling and fingering with the left non-dominant upper extremity, since the DOT does not address unilateral use of the upper extremities, only bilateral. And my response is based on my knowledge of how the jobs cited, food checker and auction clerk, are performed in the national economy.

(*Id*. at PageID.461). In response to questioning by Plaintiff's attorney, the VE stated that Plaintiff's former work as a retail cashier was semiskilled as described the DOT. (*Id*. at PageID.466). The VE stated that for an individual between the ages of 55 and 60, transferrable positions were limited to those that did not require a "significant vocational adjustment." (*Id*. at PageID.471). He testified that the jobs of cashier, food checker and auction clerk were "retail positions," adding that the auction clerk could be "both wholesale and retail." (*Id*. at PageID.473). He stated that "it's not

my decision as to whether [the job numbers that he provided] constitutes a significant number" to support a non-disability determination. (*Id*. at PageID.475). In response to the ALJ's questioning, the VE concurred that Plaintiff's cashiering skills were "highly marketable," giving her "a competitive edge over younger potential employees who would have no skills." (ECF No. 8-8, PageID.479-480). The VE reiterated that his testimony as to the past relevant work, transferrable positions, and other jobs was based on the DOT and his own experience "in business and industry." (*Id*. at PageID.481).

## F.  Arguments and Analysis

Plaintiff challenges various aspects of the ALJ's finding that she possessed skills transferrable to other work acquired through her former work as a cashier.[4] (ECF No. 10).  She contends that she does not possess skills transferrable to other work, arguing instead that her former work as a cashier was unskilled.  (*Id*. at PageID.1282); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00.  Plaintiff argues next that even if her former work could be classified as "semiskilled," substantial evidence does not support the finding that her existing work skills were "readily transferrable" to other positions as required by § 202.00(c).  (ECF No. 10,

---

[4] As noted above, Plaintiff's challenge to the Commissioner's determination is limited to the step five findings.

PageID.1297). She also appears to contend that substantial evidence does not support a finding that the jobs cited by the VE require "very little, if any vocational adjustment" as required by § 202.00(f) for individuals 60 or older. (*Id*. at PageID.1291-92, 1294). Last, she argues that the two occupations of cashier/food checker and auction clerk, standing alone, do not constitute a "significant range of work" and that § 202.00(c) requires evidence that she has transferrable skills applicable to at least *three* occupations. (*Id*. at PageID.1287) (citing *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006); *Maxwell v Saul*, 971 F.3d 1128 (9th Cir. 2020)).

In turn, the Commissioner argues that substantial evidence supports the finding that Plaintiff's skills were transferrable under § 202.00 and the other regulations regarding transferability for individuals 55 to 60 and 60 and older. (ECF No. 12, PageID.1320-26) (citing 20 C.R.F. § 404.1568(d)). The Commissioner argues that Ninth Circuit's finding in *Lounsburry* and *Maxwell* that a significant range of "work" means a significant range of "occupations" under § 202.00 has not been accepted by the Sixth Circuit. (ECF No. 12, PageID.1327).

In determining whether a claimant is disabled, the SSA considers "chronological age in combination with . . . residual functional capacity, education,

and work experience." 20 C.F.R. § 404.1563.[5]  The SSA considers "advancing age

to be an increasingly limiting factor" in the claimant's ability to make an adjustment

to other work.  *Id.*  Plaintiff, 56 as of the alleged onset of disability date, was

classified as an individual of "advanced age," and as of her 60th birthday, an

individual "closely approaching retirement age." § 404.1563(e).   In determining

whether a claimant,  55 to 60, who is capable of light work and whose past relevant

work was semiskilled has transferrable skills, an ALJ must consider if in the other

work  (1) "[t]he same or a lesser degree of skill is required;" (2) "[t]he same or

similar tools and machines are used;" and (3) "[t]he same or similar raw materials,

products, processes, or services are involved." 20 C.F.R. § 404.1568(d)(2)(i)-(iii),

(d)(4).  In addition to these requirements, for an individual of 60 or older with the

same RFC and work history, a finding of transferrable skills to other work can be

made "only if the light work is so similar to [her] previous work" that she would

require "very little, if any, vocational adjustment in terms of tools, work processes,

work settings, or the industry." § 404.1568(d)(4).[6]

---

[5]The Undersigned cites only the DIB regulations.  Although Plaintiff applied for
both DIB and SSI, the DIB regulations are identical to the ones applied to her SSI
claim.

[6] The VE's finding of transferrable jobs to sedentary work rather than light work
does not change the analysis.  Under the SSA's regulations, "[i]f someone can do
light work, we determine that he or she can also do sedentary work . . . ."  20
C.F.R. § 404.1567

Similarly, under the SSA's Medical Vocational Guidelines ("Grids"), claimants of advanced age (55-60) and capable of light work who can no longer perform their past relevant work must possess skills that are "readily transferable" to a significant range of semi-skilled or skilled work within their functional capacity to avoid a finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c). As to an individual of advanced age (60 or older), for a finding of transferability of skills to light work "there must be *very little, if any*, vocational adjustment required in terms of tools, work processes, work settings, or the industry." *Id.*, § 202.00(f) (emphasis added).   For a finding that the claimant has transferrable skills to other work, it is the Commissioner's burden "to show a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010) (internal citations omitted).

### 1. Substantial Evidence Supports the Finding that Plaintiff's Former Work was Semiskilled[7]

-------------------

[7] Plaintiff's argument that substantial evidence supports the finding that the former work was unskilled (rather than semiskilled) misstates the proper standard in reviewing the denial of DIB or SSI. Where substantial evidence ("less than a preponderance" but more than a scintilla of the evidence) supports the administrative findings, the determination should remain undisturbed by the reviewing court. *Rogers*, 486 F.3d at 241.   The fact that substantial evidence could support the opposite conclusion is of no import.

After listening to Plaintiff's testimony regarding her former job duties, the VE testified that Plaintiff's past relevant work as a "Cashier-Checker (retail trade)," DOT No. 211.462-014 was semiskilled.  (ECF No. 8-8, PageID.452, 467).  The VE testified that based on modifiers posed by the ALJ, Plaintiff possessed transferrable skills allowing for the sedentary positions of cashier (food checker) DOT No. 211.482-014 (58,000 jobs in the national economy) and auction clerk, DOT No. 294.567-010 (6,000).  (*Id*. at PageID.460).  Notwithstanding a vigorous and lengthy cross examination of the VE by Plaintiff's attorney, the ALJ adopted the VE's testimony that the former cashier work was semiskilled, noting that while *some* of Plaintiff's work activity was the same as in an unskilled position, the former work also included semiskilled activities:

> The claimant handled a cash register and processed payments for a variety of department store goods. She scanned barcodes on smart phones to apply coupons to purchases. She assisted customers and kept her register area clean. She helped re-display products that customers decided not to purchase at check out. She occasionally used a Palm Pilot to determine if the store had a specific item available for purchase . . . . I conclude that during the 10 years that the claimant worked at Kohl's, she acquired the work skills of cashiering and processing forms of payment (including credit card, check, or cash) for goods.

(*Id*. at PageID.438).

Further, as required by the District Court's order of remand, the ALJ queried the VE as to any discrepancies between the information found in the DOT and the

job testimony.  Case No. 2:20-cv-11033; (ECF No. 18, PageID.555-557).  "When there is an apparent unresolved conflict between VE [testimony] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [testimony] to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

Plaintiff's contention that the ALJ failed to resolve the "conflict" between the VE's testimony and the DOT is unavailing.  The VE testified that Plaintiff's self-described past work as a cashier was semiskilled as stated in the DOT (DOT No. 211.462-014) and also based on his own professional experience. *Id.*  While Plaintiff's attorney sought to establish that the job duties in the former position were no different than a cashiering position listed as unskilled in the DOT (DOT No. 211.462-010, Cashier II or "cash clerk"), the VE testified that that purportedly unskilled position cited by the attorney was now performed at the semiskilled level. (ECF No. 8-8, PageID.468).  So, while the VE's testimony raised a discrepancy between the DOT's classification of another position as unskilled and the VE's opinion that the position as currently performed was actually semiskilled, there was no actual conflict between his testimony that Plaintiff's former work was semiskilled and the applicable DOT listing.  The only "conflict" was between the VE's testimony and the attorney's unsupported contention that the former work was unskilled.

18

Again, because the ALJ elicited testimony regarding a *possible* conflict with the DOT, and the VE's testimony on this point did not actually conflict with the information found in the DOT, the ALJ permissibly adopted the VE's testimony regarding the former work. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606-07 (6th Cir. 2009) (citing SSR 00-4p, at *4) (ALJ did not err in accepting the VE's job testimony in support of the step five determination).

### 2.  Transferrable Positions

The transferrable jobs cited by the VE and adopted by the ALJ also took into account Plaintiff's status as an individual of "advanced age," and then as of her 60th birthday, "closely approaching retirement age." The VE concurred with the ALJ's characterization of the food checker and auction clerk positions as not needing "significant vocational adjustment," as required for a finding of transferrable skills an individual of advanced age. 20 C.F.R. § 404.1568(d). The VE elaborated on his findings, stating that the transferrable skills included "[p]rocessing payments from customers via credit card, check [and] money orders . . . ." (ECF No. 8-8, PageID.472). The VE's testimony satisfies the requirements for "the same or a lesser degree of skill"; the "same or similar tools and machines" (cash register); the "same or similar raw materials, products, processes, or services" (scanning products for purchase); and involves the same job functions as required by § 404.1568(d)(2)(i)-

(iii).

In addition, the VE stated that the individual in question would be performing the essentially the same functions in the transferrable positions, thus satisfying the requirement for an individual of 60 or older to show significant work needed "very little, if any, vocational adjustment" as set forth in § 404.1568(d)(4) and § 202.00(f). (*Id.*)  The VE noted further that the food checker position, like Plaintiff's former work, was a "retail" position and the auction clerk position was "both wholesale and retail." (*Id.*)  He stated that the positions did not require "computer applications" requiring the use of software programs.  (*Id.* at PageID.476).  He characterized the food checker position as a cashier working "in a hospital" cafeteria or "a cashier in a commercial office building," where the worker would "simply ring up customer purchases for food and snacks." (*Id.* at PageID.478).

The VE's exhaustive testimony regarding the transferability of skills and the ALJ's adoption of the same does not provide a basis for remand.[8]

---

[8]Plaintiff also takes issue with the ALJ's finding that her "experience as a cashier gives [her] a competitive edge over younger individuals, as cashiering and processing payments are desirable skills for employers" (ECF No. 8-8, PageID.439) noting that the "competitive edge" language was drawn from later-rescinded Administrative Ruling ("AR-95-1(6)").  (ECF No. 10, PageID.1300).  At the hearing, ALJ acknowledged that AR-95-1(6) had been rescinded.  While the term of art from AR-95-1(6) was used in the administrative decision, the ALJ properly cited § 202.00(c) (regarding individuals of advanced age) and 202.00(f) (regarding individuals closely approaching retirement age) in performing his analysis.  (ECF

### 3. A Significant Range of Work

Plaintiff's argument that a "significant range of work" requires a finding that she could transfer her skills to at least three other occupations is based on the Ninth Circuit's holdings in *Lounsbury v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006) and *Maxwell v Saul*, 971 F. 3d 1128 (9th Cir. 2020).

In *Loundsburry,* the Court interpreted the "a significant range of semi-skilled or skilled work" of § 202.00(c) to mean a significant number of "distinct *occupations*" rather than merely a significant number of jobs. 468 F.3d at 1116 (citing SSR 83–10 1983 WL 31251, at *16 (1983) (SSR 83-10 "defines the phrase, 'Range of Work,' as '*Occupations* existing at an exertional level' . . . . We thus construe the phrase 'significant range of ... work' in Rule 202.00(c) to require a significant number of occupations.")) (emphasis added by *Loundsburry*).  The Court held that the administrative finding that Loundsburry's skills transferred to only one other occupation did not satisfy the requirement of § 202.00(c) to show a significant "range" of work.  *Id.* at 1117.  *Maxwell*, 971 F.3d at 1132, adopted the *Lounsbury* holding that "a significant range of work" meant a range of occupations

---

No. 8-8, PageID.438-439).  Further, the VE applied the standards of § 202.00 and § 404.1568(d) when offering the job testimony.  Despite the ALJ's use of "competitive edge," there is no reason to believe that he applied the wrong standard in finding that Plaintiff had transferrable skills.

and that transferrable skills to only two occupations (like the one occupation in *Lounsburry*) did not constitute a significant "range." "Following *Lounsburry*'s approach, we now hold that two occupations do not constitute a significant range of work." *Id.*

As a threshold matter, the reasoning in *Lounsburry* and *Maxwell* is not binding on this Court.  In *Geiger v. Apfel*, 229 F.3d 1151, 2000 WL 1257184, at *2 (6th Cir. 2000), the Court flatly rejected the argument that the one occupation of dispatcher did not amount to a "significant range of work" under § 202.00(c) ("Geiger's skills were transferable to any dispatcher-type position and . . . 75,000 such jobs existed nationwide.").  *See also Baumbach v. Comm'r of Soc. Sec.*, No. 1:13-CV-851, 2015 WL 139714, at *9 (W.D. Mich. Jan. 12, 2015) (citing *Kyle*, 609 F.3d at 855):

> Absolutely nothing . . . supports plaintiff's argument that the Commissioner cannot satisfy her burden at Step 5 of the sequential analysis unless the VE's testimony identifies a significant number of "occupations," rather than a significant number of jobs. . . . *Lounsburry* has never been cited in any decision of the United States Court of Appeals for the Sixth Circuit. The law in the Sixth Circuit is that a VE's testimony must provide evidence of a significant number of jobs, not occupations.

While *Kyle* does not address the "significant range of work" language of § 202.00(c), it cites the standard to be applied for a finding that a claimant possessed transferrable skills:  at step five, "the burden shifts to the Commissioner at step five to show a significant number of jobs in the economy that accommodate the

claimant's residual functional capacity . . . and vocational profile."   While *Kyle* requires evidence of a significant number of jobs, there is no additional requirement for a significant range of *occupations*, much less a bright line rule that the vocational expert must provide more than two occupations to satisfy the Commissioner's step five burden.   *Kyle* relies on § 404.1566, which states in relevant part that "[w]ork exists in the national economy when there is a significant number of jobs (in *one or more* occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." § 404.1566(b) (emphasis added).   Aside from the lack of support from this Circuit, the Ninth Circuit's imposition of an additional requirement to find of at least three *occupations* to avoid a disability finding is questionable, given that under § 404.1568(d), (1) the range of "transferrable" work is already narrowed for an individual of 55 to 60 and then even more so for an individual 60 and above, and (2) the regulations already require a significant number of jobs.  Given the SSA's recognition of the narrowed range of job opportunity for older individuals, it is unclear why a finding (for example) that a total of 20,000 jobs divided among three occupations would be yield a better result than the present case, where a total of 64,000 jobs were divided among two occupations.  While both 20,000 and 64,000 jobs represent a "significant" number

of positions under the Sixth Circuit's standard,[9] the availability of 64,000 positions derived from two occupations, by any account, represents greater job opportunities than 20,000. Again, because the Sixth Circuit has not interpreted § 202.00 to require a finding of three occupations, there is no basis for the Court to conclude that the VE's finding of two occupations is insufficient to support the ALJ's step five findings.

In further support of the same argument, Plaintiff contends that the SSA's Program Operations Manual System ("POMS"), DI 25025.030(C), requires the VE to list three occupations representing "other" work that can be performed by the hypothetical individual. (ECF No. 10, PageID.1295).[10] However, this requirement is directly followed by an exception allowing for a finding of "fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupations[]." *Id.* As discussed above, 64,000 jobs indisputably represent a "significant number."[11]

---

[9]Under *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016), "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" *Id.* (citing *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 579 (6th Cir. 2009)).

[10]  https://secure.ssa.gov/poms.nsf/lnx/0425025030. (Last visited Oct. 3, 2022)

[11] Plaintiff's reliance on POMS cuts both ways. POMS is "a non-binding handbook produced for internal use at the Social Security Administration." *Taylor v. Berryhill,*

Appended to Plaintiff's motion is a report by vocational rehabilitation consultant Karen R. Starr stating that 280 semiskilled sedentary positions are found in the DOT. (ECF No. 10-1, PageID.1304).   Plaintiff contends that "someone with cashier skills . . . could theoretically transfer those skills to" more than two of those positions, arguing that out of the 280 occupations, the two occupations found by the VE "is not a significant range." (ECF No. 10, PageID.1295).   Starr's report also states that since the DOT was last updated in 1991, the number of "semiskilled, sedentary occupations have diminished due to changes in technology." (ECF No. 10-4, PageID.1304).

But the Commissioner correctly notes that the newly submitted report was not submitted to the ALJ; that Plaintiff has not shown good cause for the tardy submission; and that Starr's report is not "material" to the ALJ's findings, i.e. not likely to change the ALJ's findings.[12] (ECF No. 12, PageID.1329).

---

No. CV 17-11444, 2018 WL 3887521, at *7 (E.D. Mich. July 5, 2018) (Grand, M.J.), *report and recommendation adopted sub nom. Taylor v. Comm'r of Soc. Sec.*, No. 17-CV-11444-DT, 2018 WL 3870066 (E.D. Mich. Aug. 15, 2018).   While Plaintiff cites POMS DI 25025.030(c) for the argument that the ALJ was required to find at least three occupations, the exception allowing for less than three occupations where jobs nonetheless exist in significant numbers undermines the *Maxwell* holding that at three occupations are required to avoid a finding of disability under § 202.00(c).

[12] The evidence post-dating the administrative decision is subject to a narrow review by the court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). For a remand for

I agree that even if Plaintiff could show "good cause" for failing to submit Starr's report prior to the administrative decision, the report would not change the ALJ's findings.  In citing Starr's report, Plaintiff appears to contend that the two cashiering positions identified by the VE do not amount to a "significant range" of the 280 occupations identified by Starr.  However, as discussed above, the Sixth Circuit has held that even one occupation using transferrable skills is permissible so long as the job numbers in that occupation reflect a significant number of positions. *Geiger,* 2000 WL 1257184, at *2.

Plaintiff's additional, implied argument that the VE's testimony was based on the outdated information found in the DOT is also unavailing.  The VE testified that his job findings were not only based on the information found in the DOT but also his own current knowledge of the national job market. (ECF No. 8-8, PageID.461, 463-64 *see also* 481).  The VE noted that since the DOT was last updated, the skill level for at least one position did not reflect the current job market.  (*Id*. at PageID.467-69, 477).  Plaintiff provides no basis for her contention that the VE

---

review of the newer records under the sixth sentence of 42 U.S.C. § 406(g), the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of HHS*, 865 F.2d 709, 711 (6th Cir. 1988).

woodenly applied the information found in the DOT without reference to his own professional experience or changes to the job market in the past 30 years.

Because none of Plaintiff's arguments provide a basis for remand and the ALJ's finding that she possessed transferrable skills is well supported by the VE's testimony, I recommend that the administrative determination remain undisturbed.

## G. Conclusion

For these reasons, I recommend that the Commissioner's motion for summary judgment (ECF No. 12) be **GRANTED** and that Plaintiff's motion (ECF No. 10) be **DENIED**.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to

raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 6, 2022                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge

28